Zakee Rahmaan SHABAZZ, a/k/a Gary Eugene Tyson, Plaintiff,

v.

David SCURR and James Menke, Defendants.

Cleo FRANKLIN, Administrator of the Estate of Gary Tyson, Deceased, Plaintiff,

v.

David SCURR, et al., Defendants.

Civ. Nos. 81–399–E, 82–533–E.

United States District Court, S.D. Iowa, C.D.

May 28, 1987.

Robert Wright, Sr., Des Moines, Iowa, for plaintiffs.

Gordon Allen, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

### ORDER

DONALD E. O'BRIEN, Chief Judge.

The Court has before it a question of first impression concerning the power of a former prison ombudsman for the Iowa Citizens' Aide Ombudsman Office ("ICA/OO") to act as a witness and a private investigator on behalf of plaintiffs in a federal constitutional case which arose during his tenure as a prison ombudsman. The legal right of the former ombudsman, Mr. Ray Cornell, to serve in these capacities has been challenged by present members of the ICA/OO staff, who believe that Cornell's rights are limited by privileges and immunities created by state law to protect their office. For reasons given below, the Court finds that a limited privilege

exists under federal law[1] which may be asserted against Mr. Cornell by present officials of the ICA/OC. Communications received by Mr. Cornell as prison ombudsman are privileged matters which he cannot repeat in court or while serving as an investigator in this matter. This privilege does not extend to Mr. Cornell's general knowledge or expertise. However, the present ICA/OO officers may not assert Mr. Cornell's state-law testimonial immunity[2] as a citizens' aide. While that immunity did not disappear when Mr. Cornell left office, it is personal, not official, and may be waived by Mr. Cornell if he so chooses.

The office of ICA/OO and the prison ombudsman position were created by an act of the Iowa Legislature in 1973. The most important functions performed by the members of the office begin when a complaint against a state agency or official is received. Iowa Code § 601G.9 authorizes the office to investigate several types of complaints and provides it with significant investigatory powers, including access to state documents and subpoena power. When the office concludes that action is warranted, it may issue a recommendation to the executive or legislative branches. Iowa Code § 601G.16. However, the office has no formal remedial or preventative authority of its own.

From 1973 until 1984, Ray Cornell was the prison ombudsman in the ICA/OO. On September 2, 1981, he was present at the Iowa State Penitentiary when a major disturbance broke out. When officials regained control, they discovered the body of Gary Tyson, also known as Zakee Rahmaan Shabazz, who had been murdered during the uprising. Tyson had filed a § 1983 complaint against prison officials in this court shortly before his death. Following his death, his family members filed a separate § 1983 complaint against prison officials, and these two suits were consolidated and will soon be tried.

Mr. Cornell now operates a private consulting firm providing investigative services and expert testimony in jail and prison cases. He has agreed with plaintiffs' counsel to provide these services at a reduced rate in this case, and plaintiffs' counsel has sought reimbursement from the Court. On April 24, 1987, Susan Voss of the ICA/OO filed a motion on behalf of the office to intervene in order to assert the following state law evidentiary privilege:

> The Citizens' Aide may maintain secrecy in respect to all matters including the identities of the complainants or witnesses coming before the Citizens' Aide, except that the General Assembly, any standing committee of the General Assembly or the Governor may require disclosure of any matter and shall have complete access to the records and files of the Citizens' Aide. The Citizens' Aide may conduct private hearings.

Iowa Code § 601G.8 (1985). The ICA/OO also seeks to invoke the immunity from compelled testimony in § 601G.20, which states that "the Citizens' Aide or any member of the staff [shall not] be compelled to testify in any court with respect to any matter involving the exercise of the Citizens' Aide's official duties except as may be necessary to enforce the provisions of this chapter." The office seeks to prevent Cornell from testifying about matters concerning Gary Tyson and the circumstances of his death which Cornell learned during his tenure. It does not object to his use as a resource or as a witness on prison rules and policies, the daily operation of a prison, or any other general knowledge not otherwise confidential by law.

Because this is a federal case, the legal question regarding the ICA/OO's motion must be resolved according to federal law. In drafting the Federal Rules of Evidence, Congress expressly left the task of defining the scope of evidentiary privileges in federal subject matter cases to the federal courts, asking only that they be governed by "the principles of the common law as they may be interpreted ... in light of reason and experience." Fed.R.Evid. 501. Thus, the fact that an Iowa statute creates

---

**1.** *See* discussion of the role of state law in federal evidentiary privileges at p. 91.

**2.** *See* note 1, *supra.*

a privilege and a testimonial immunity does not automatically mean that this Court can recognize them. But in light of the unique function of the ICA/OO, the law which created that office is the best indication of its purposes. To the extent that those purposes make the office comparable to other individuals and entities already protected by federal privileges, the office deserves similar protection.

■ As a result of § 601G.8 and other confidentiality provisions, citizens have an expectation that their complaints to the office will only be disclosed to the Governor or the General Assembly, if they are disclosed at all. The basis for a privilege would be much stronger if full confidentiality were required. However, the Court is persuaded that the flow of information to the office from citizens would be threatened if it became known that the statutory assurances of general confidentiality would not be respected in federal court. The office cannot compel citizens and other whistle-blowers to come forward; they must choose to do so. Thus, anything which chills a citizen's willingness to come forward limits the office's effectiveness in the long run and may restrict the spectrum of available information. It has been said that a court's primary consideration in privilege cases should be whether the exclusion of the evidence in question would actually promote the creation of information which might not otherwise exist; if so, the exclusion is justified. Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists,* 66 Va.L.Rev. 597, 600 n. 9 (1980). The Court finds that complaints received by Ray Cornell as ombudsman are privileged because such confidentiality is necessary to ensure that complaints will be made.

A more difficult question is posed by communications received by Mr. Cornell from state officials while investigating complaints or inquiries. These kinds of communications could be compelled through the office's subpoena power, so that in theory the information can be created one way or another. In practice, however, the willingness of the staff to investigate complaints may diminish if they must go to court whenever a straight answer is needed from a state official. Thus, preserving the confidentiality of communications received during investigations helps to ensure that those communications will take place.

The office also argues that confidentiality is needed to informally resolve problems which arise, and this Court agrees. Courts have a special interest in protecting the office's problem-solving function. This Court spends far too many hours in litigation between prisoners and state officials attempting to remedy problems which could have been prevented or reconciled informally. If state officials become less candid when contacted by an ombudsman out of fear that any admission might be used against them in a subsequent legal action, the power of the office to solve problems will diminish. While informal dispute resolution is seldom protected by privileges, other rules of evidence such as the exclusion of settlement discussions and plea bargain statements reflect "the public policy favoring the compromise and settlement of disputes." (Fed.R.Evid. 408 advisory committee note.) This public policy is an appropriate basis for this Court to respect the confidentiality of communications received by the ICA/OO from state officials.

The Court further believes that the incumbent officials of the ICA/OO are the proper persons to assert this privilege. As the foregoing discussion sets out, the interests to be protected by this privilege are the interests of the office, and not simply of the individuals who perform its tasks. The U.S. Supreme Court has recognized that the privilege protecting communications of a president may be asserted by subsequent holders of that office because "the privilege is not for the benefit of the president as an individual." *Nixon v. Administrator of General Services,* 433 U.S. 425, 449, 97 S.Ct. 2777, 2793, 53 L.Ed.2d 867 (1977). *See also United States v. Reynolds,* 345 U.S. 1, 7, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) (state secrets privilege "belongs to the government and must be

asserted by it; it can never be claimed nor waived by a private party.").

In its brief, the ICA/OO presented the more sweeping assertion that it could invoke Mr. Cornell's state law immunity from being compelled to testify concerning the exercise of his official duties so as to prevent him from voluntarily testifying. Reasoning again by analogy, the Court finds that the testimonial immunity may be waived by Mr. Cornell. Unlike privileges, testimonial immunities protect persons, rather than communications. This testimonial immunity is similar to the immunity of congressmen and their aides from being "questioned in any other place" about legislative matters. U.S. Const. Art. I, § 6. As the Supreme Court held in *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), such immunity can only be invoked by the testifying congressman or aide, and may be waived by the congressman. 408 U.S. at 621–22, 92 S.Ct. at 2625. If it is waivable by an individual, it follows that it cannot be asserted by the ICA/OO. Thus, if Mr. Cornell chooses to waive this immunity, neither the Court nor the office can prevent him from doing so.

The Court agrees with the ICA/OO that the privilege protecting confidential communications does not prevent Mr. Cornell from using his general expertise, even though he may not have been able to achieve that level of expertise without the benefit of protected communications. Any chilling effect resulting from his use of this expertise is too speculative to outweigh the value of that expertise. However, the Court recognizes that the distinction between protected communications and general expertise is not a perfect one and that it may require some clarification in particular circumstances.

The Court emphasizes that the privilege for protected communications does not prevent Mr. Cornell from testifying about his own perceptions. For example, in *Green v. Baron*, —— F.Supp. ——, 80–313–E (S.D. Iowa 1987), Mr. Cornell recently testified that he measured the temperatures in a portion of the Iowa Security Medical Facility in Oakdale. Under § 601G.9, Mr. Cornell had a right to enter the facility to conduct such tests, and officials had no right to bar him. Thus, permitting Mr. Cornell to testify about such perceptions should have no chilling effect.

Furthermore, the privileged nature of communications Ray Cornell received as ombudsman does not prevent the plaintiffs from using other means to prove the existence of facts communicated to him. Plaintiffs assert that "the information surrounding the death of Gary Tyson is now public record" because of subsequent media coverage and criminal trials. Yet this privilege does not bar the plaintiffs from proving these circumstances through nonprivileged evidence, such as court documents and public testimony.[3] "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with [the ombudsman.]" *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). However, the public revelation of a fact communicated confidentially to Mr. Cornell does not make the communication public, unless the substance of the communication to Mr. Cornell was publicized by the person who communicated it privately to the ombudsman.

The Court believes the parties should respond to this ruling in the following manner. Mr. Cornell must refrain from revealing privileged matters, either as an investigator or witness. However, he may continue to serve in either capacity and may assist plaintiffs' counsel in depositions as long as he abides by the rest of this order when doing so. If Mr. Cornell will be called as a witness, he should be deposed as soon as possible, and counsel for each party shall ask all questions which might require a privileged answer. In responding, Mr. Cornell should make a good-faith attempt not to reveal privileged material, but should be prepared to explain to the Court why the answer would be privileged. Any disputes as to the scope of this order

---

3. The parties should recognize the significant limitations imposed by the hearsay rules on the use of non-privileged statements made outside of this court.

should be resolved following the deposition, and counsel should expect to present all objections based on privilege at that time.

The Court also believes the plaintiffs' motion to seek reimbursement from the Court for a portion of Mr. Cornell's fee is warranted. This is not a typical prisoner case, and the Court believes Mr. Cornell may be able to assist the plaintiffs' counsel in a way which will significantly decrease the cost of the upcoming trial to the Court and to the defendants. The Court does not intend to make Mr. Cornell dependent upon it for his income, and this order is not intended to set a precedent affecting other cases. The Court merely finds that in the special circumstances of this matter, reimbursement for a fee not to exceed $1,000.00 would be proper. If the plaintiffs prevail either at trial or through a settlement, Mr. Cornell's fee shall be paid from any award, and any amount advanced by the Court shall be repaid.

The ICA/OO has asked the Court to review several documents *in camera* in order to assist it in considering its motions. The Court found it unnecessary to review any documents in reaching this decision. However, if the office believes privileged materials are relevant to any objections it makes during Mr. Cornell's deposition, it should so inform the Court, and the Court shall review them.

IT IS THEREFORE ORDERED that communications received by Ray Cornell as a prison ombudsman are privileged communications which he cannot repeat in court or while serving as an investigator.

IT IS FURTHER ORDERED that this privilege does not extend to Mr. Cornell's general knowledge and expertise.

IT IS FURTHER ORDERED that the current Citizens' Aide officials may not assert Mr. Cornell's testimonial immunity.

IT IS FURTHER ORDERED that upon a showing that Mr. Cornell has performed the services for which he is seeking reimbursement, the Clerk of Court shall reimburse him at the rate of $20.00 per hour, up to $1,000.00. If the plaintiffs prevail at trial or in a settlement, Mr. Cornell's fee shall be paid from the award, and any amount advanced by the Court shall be repaid.

IT IS FURTHER ORDERED that the ICA/OO's motion for an *in camera* showing is denied at this time, but may be renewed if necessary at a later stage of the proceedings.