**Cathy Arrowood WALKER, Plaintiff,**

v.

**Jon LEWIS and Sullair Corporation, Defendants.**

**No. C–C–87–215–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 13, 1989.

Mark A. Michael, Charlotte, N.C., for plaintiff.

Philip Van Hoy, John J. Doyle, Weinstein & Sturges, P.A., Charlotte, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

Plaintiff Cathy Walker asserts three claims against defendants Jon Lewis and Sullair Corporation: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) intentional infliction of emotional distress; and (3) malicious prosecution. The court has jurisdiction over the Title VII claim under 28 U.S.C. §§ 1331 and 1343, and has jurisdiction over the state law claims under the doctrine of pendent jurisdiction. Because plaintiff and defendant Lewis are citizens of North Carolina, there is no diversity jurisdiction.

On January 3–12, 1989, the Title VII claim was tried to the court and the two pendent state law claims were tried to a jury. On January 12, 1989, after nearly a day's deliberation, the jury was deadlocked, and the court declared a mistrial.

On January 25, 1989, defendant Lewis moved pursuant to Fed.R.Civ.P. 50(b) for judgment. On January 26, 1989, defendant Sullair Corporation also moved pursuant to Fed.R.Civ.P. 50(b) for judgment. On February 2, 1989, plaintiff responded to defendants' motions for judgment.

On May 25, 1989, the court denied the motions for judgment and requested the clerk to calendar this action on a future jury trial calendar. Subsequently, on June 5, 1989, plaintiff filed a voluntary dismissal with prejudice as to defendant Lewis only. For the dismissal to be effective, Fed.R. Civ.P. 41(a) requires an order of the court.

There is one other issue before the court. On May 12, 1989, defendant Sullair Corporation moved to reopen discovery for a period of sixty days, primarily to investigate (1) allegations by plaintiff's now-estranged husband, Tommy Walker, and (2) the settlement between plaintiff and defendant Lewis. Sullair Corporation proposes to take depositions of the plaintiff, defendant Lewis, Robert Bogaert (a witness in the first trial) and plaintiff's estranged husband.

On May 18, 1989, plaintiff claimed spousal privilege and objected to reopening discovery on the basis of allegations made by her estranged husband. Asserting that under Fed.R.Evid. 501 "questions of privilege are resolved by the application of forum law," plaintiff cites N.C.Gen.Stat. § 8–56 (1986) in support of her objection. N.C. Gen.Stat. § 8–56 provides that "[n]o husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage." The nonwitness spouse holds the privilege

and may prevent the witness spouse from testifying about confidential communications. *Hicks v. Hicks,* 271 N.C. 204, 155 S.E.2d 799 (1967); *Scott v. Kiker,* 59 N.C. App. 458, 297 S.E.2d 142 (1982). Thus, under North Carolina law, plaintiff may prevent her husband from testifying about their confidential communications during marriage.

On June 1, 1989, defendant Sullair Corporation filed a reply to plaintiff's objection. Also citing Fed.R.Evid. 501, Sullair argues that in this non-diversity jurisdiction case, federal privilege law must be applied. Under federal common law, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186 (1980). In an affidavit dated June 1, 1989, and attached to defendant Sullair Corporation's reply memorandum, plaintiff's husband states that he is willing to testify adversely. Thus, under federal law, none of his testimony is privileged.

Discovery in civil litigation pending in a federal court is governed by the Federal Rules of Civil Procedure. The scope of discovery under the rules is very broad. Fed.R.Civ.P. 26(b)(1) provides in relevant part that "[p]arties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." (Emphasis added.)

The principles by which a federal court determines whether material sought is privileged are set forth in Fed.R.Evid. 501. The rule reads as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Rule 501 provides that federal privilege law will apply generally, with the proviso that in civil actions state privilege law will apply to state law claims or defenses. Because this action involves federal and state claims, the text of Rule 501 requires the court to consult two bodies of privilege law. As discussed above, federal law and North Carolina law on spousal privilege are in sharp conflict. Unfortunately, Rule 501 does not address the question of how the conflict should be resolved.

Congressional intent on the problem of conflicting federal and state privilege law is unclear. *American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d 1336, 1343 n. 13 (5th Cir. Unit A March 1981); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458–59 (N.D.Cal. 1978); 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5434 at 861 (1980). Article V of the Federal Rules of Evidence as submitted to Congress by the Supreme Court contained thirteen rules. H.R.Rep. No. 650, 93rd Cong., 1st Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 7051, 7075, 7082 [hereinafter House Report]. Nine of those rules defined specific non-constitutional privileges which the federal courts must recognize. *Id.* "From the outset, it was clear that the content of the proposed privilege provisions was extremely controversial." S.Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7053 [hereinafter Senate Report]. "Since it was clear that no agreement was likely to be possible as to the content of specific privilege rules, and since the inability to agree threatened to forestall or prevent passage of an entire rules package, the determination was made that the specific privilege rules proposed by the Court should be eliminated...." *Id.* The House Judiciary Committee drafted a single rule, 501, which left the law of privileges in its present state, to be developed by applying

the principles of the common law as interpreted by the courts of the United States in the light of reason and experience. 1974 U.S. Code Cong. & Admin. News, *supra,* at 7082. In addition, a proviso was approved requiring federal courts to recognize and apply state privilege law in civil cases governed by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Id.*

The Senate Judiciary Committee agreed "with the main thrust of the House amendment: that a federally developed common law based on modern reason and experience shall apply except where the State nature of the issues renders deference to State privilege law the wiser course, as in the usual diversity case." 1974 U.S. Code Cong. & Admin. News, *supra,* at 7058. Understanding the "thrust of the House amendment to require that State privilege law be applied in 'diversity' cases," the Senate found that the language of the House amendment went beyond that goal in some respects and fell short of it in others. *Id.* In particular, the Senate Judiciary Committee recognized that the House formulation would result in conflicts like the one in this action.

Another problem not entirely avoidable is the complexity or difficulty the rule introduces into the trial of a federal case containing a combination of Federal and State claims and defenses, e.g. an action involving Federal antitrust and State unfair competition claims. Two different bodies of privilege law would need to be consulted. It may even develop that the same witness-testimony might be relevant on both counts and privileged as to one but not the other.

*Id.* at 7059.

Concerned that "[t]he formulation adopted by the House is pregnant with litigious mischief," the Senate proposed to amend the state law proviso so that it would apply only in diversity actions. *Id. See* H.R.Conf.Rep. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 7098, 7100 [hereinafter Conference Report]. Under the Senate version of Rule 501, the problem of conflicting federal and state privilege law would be handled in two ways. First, the Senate "intended that the Federal law of privileges should be applied with respect to pendant [sic] State law claims when they arise in a Federal question case." 1974 U.S. Code Cong. & Admin. News, *supra,* at 7059 n. 16. Second, in diversity cases, conflicts between federal and state privilege law would be resolved in favor of the body of law favoring admission of the evidence. *Id.* at 7059 n. 17.

The conference adopted the House version of Rule 501 and rejected the Senate's proposed amendment to the state law proviso; however, the conference report does not address the problem of conflicting federal and state privilege law. *See* 1974 U.S. Code Cong. & Admin. News, *supra,* at 7100–01. Thus, it is impossible to know whether Congress also rejected the Senate's suggestions on how to resolve problems of conflicting privileges.

Without guidance from the text of the rule or the legislative history, the courts must decide the issue of conflicting federal and state privilege law for themselves. Professors Wright and Graham propose five ways of handling the problem: (1) always follow federal privilege law; (2) always follow state privilege law; (3) attempt to apply both privileges by admitting the putatively privileged matter and giving the jury a limiting instruction; (4) apply the rule which would admit the evidence; and (5) have no rule and resolve questions of conflicting privileges on an *ad hoc* basis by balancing state and federal interests. 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5434 at 862–64 (1980). Wright and Graham dismiss the second solution because they conclude that no federal court is likely to adopt it, and they dismiss the third solution because "[n]o one seems to favor this approach." *Id.* at 862.

Where the issue is the discoverability of evidence in federal question litigation which is relevant to federal claims and to pendent state law claims, courts consistently have held that the asserted privileges are governed by principles of federal law. *E.g., von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987); *Wm.*

*T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n. 3 (7th Cir.1981); *First Federal Sav. & Loan v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 560 (S.D.N.Y.1986); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D.Del.1985); *Dorsten v. Lapeer County General Hospital*, 88 F.R.D. 583, 586 (E.D. Mich.1980); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 494–95 (S.D.Fla.1980); *F.D.I.C. v. Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345, 349 (N.D.Ill.1979); *Robinson v. Magovern*, 83 F.R.D. 79, 84–85 (W.D.Pa.1979); *Lewis v. Capital Mtg. Investments*, 78 F.R.D. 295, 312–13 (D.Md. 1978); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D.Cal. 1978). The Fourth Circuit Court of Appeals does not appear to have addressed the question.

Professors Wright and Graham suggest that the trend toward applying federal privilege law, in federal question cases with pendent state law claims, supports their first proposed solution to the problem of conflicting privileges—always apply federal privilege law. 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5434 at 862 (1980). However, in the cases cited above, application of federal privilege law allowed the relevant evidence to be discovered. Thus, the cases are also consistent with their fourth proposed solution—apply the rule favoring admissibility. In fact, the holding in *Thompson* assumes the equivalence of these two solutions: "[W]hen there are federal law claims in a case also presenting state law claims, the *federal rule favoring admissibility,* rather than any state law privilege, is the controlling rule." 671 F.2d at 104 (emphasis added).

■ This court today holds that both solutions apply in a federal question case with pendent state law claims, albeit at different stages of the litigation. Where the issue is *discoverability* of evidence which is relevant to federal and state law claims, any conflict between federal and state privilege law must be resolved in

favor of the body of law favoring admission of the evidence. This holding is consistent with the liberal discovery provisions of the Federal Rules of Civil Procedure, and is also the most efficient method of conducting discovery with regard to all the claims between the parties.

■ Where the issue is *admissibility* of evidence at *trial* which is relevant to a federal question and to a pendent state law claim, the court must apply federal privilege law. As discussed above, this is the solution proposed by the Senate. Where the federal and state law claims are being tried together to a jury, state privilege law essentially will be ignored. However, because of liberal discovery, the court and the parties can intelligently choose whether to give effect to state privilege law by severing the trial of the state law claims in federal court or dismissing the state law claims so that they can be tried in state court. This weighing of interests is an application of the fifth solution proposed by Wright and Graham.

■ Federal privilege law will apply during the trial of plaintiff's Title VII claim to the court. However, because plaintiff's pendent state law claims will be tried to a jury independently of the trial of her Title VII claim to the court, the court can and will give effect to North Carolina privilege law. Thus, state privilege law will determine what evidence the jury may hear in relation to plaintiff's state law claims.

In accordance with the foregoing discussion, the court concludes that it should reopen discovery for a limited period of time. Defendant Sullair Corporation may ask questions on deposition as to the assertions made by plaintiff's estranged husband, and the witnesses will answer any questions put to them on those matters. However, during the depositions, plaintiff should make state law spousal privilege objections, if any, on the record. The court will rule on such objections later, if the evidence on those subjects is offered at trial, and will at that time rule whether the jury may hear the evidence.

 

IT IS THEREFORE ORDERED that this action is DISMISSED with prejudice as to defendant Jon Lewis.

IT IS FURTHER ORDERED that the parties may conduct discovery for sixty (60) days following the entry of this order.