Donna **HANSEN**, Plaintiff,

v.

**ALLEN MEMORIAL HOSPITAL,**
**Defendant.**

No. 4–91–MC–1–23–472.

United States District Court,
S.D. Iowa, C.D.

Jan. 31, 1992.

Teresa Baustian, Iowa Civ. Rights Com'n, Des Moines, Iowa, for non party— Iowa Civ. Rights Com'n.

Russell L. Samson, Dickinson, Throckmorton, Parker, Mannheimer & Raife Law Firm, Des Moines, Iowa, for Allen Mem. Hosp.

No one appeared on behalf of plaintiff, Donna Hansen.

## ORDER

MARK W. BENNETT, United States Magistrate Judge.

### I. INTRODUCTION.

This discovery dispute raises the question of whether a federal court in a claim arising under federal law with pendent state law claims must respect and apply a limited confidential privilege created solely under state law. This issue arises in the context of an employment discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* filed by Plaintiff Donna Hansen against Defendant Allen Memorial Hospital.

Allen Memorial Hospital is seeking non-party discovery of tape-recorded interviews the Iowa Civil Rights Commission ("ICRC") obtained during its investigation of the charge of discrimination filed by Donna Hansen.[1] The ICRC resists this discovery on the ground that state law[2] and its own administrative regulation[3] protect the confidentiality of ICRC files, including the tape-recorded interviews at issue here. The ICRC has moved to quash the subpoena pursuant to Rule 45(c)(3)(a) of the Fed-

---

1. Allen Memorial Hospital's subpoena specifically requested the following information: "a copy of any taped interviews from the ICRC's file relating to Donna Hansen's Charge of Discrimination, CP # 10–89–19310."

2. The ICRC relies on Iowa Code § 601A.15(4) (1991), which prohibits the ICRC from disclosing "the filing of a complaint, the information gathered during the investigation, or the endeavors to eliminate such discriminatory or unfair practice by conference, conciliation, and persuasion, unless such disclosure is made in connection with the conduct of such investigation."

3. The ICRC has promulgated rules allowing access to its investigatory files in specific circumstances. These are: (a) where there is an appeal of final agency action; (b) where the complaint has been approved for contested case hearing; (c) when the Commission's decision in a contested case has been appealed; or (d) when a right-to-sue letter has been issued. *Iowa Admin.Code* 161–11.17(1)–(4). *See also* Iowa Code § 601A.16(2).

eral Rules of Civil Procedure [4] and, in the alternative, is requesting a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure preventing the discovery of the tape-recorded interviews contained in the ICRC's files. This issue has been thoroughly briefed by both Allen Memorial Hospital and the ICRC. Oral argument was heard on January 7, 1992. The ICRC filed a supplemental brief on January 14, 1992. This matter is now fully submitted.

For the reasons set forth below, the court concludes that whether the limited confidential state law privilege should be enforced in these circumstances is a question of federal law. The limited confidential privilege will not be enforced. The tape-recorded interviews contained in the ICRC file of Ms. Hansen are subject to discovery by Allen Memorial Hospital.

## II. COURSE OF PROCEEDINGS AND FACTUAL BACKGROUND.

On or about October 9, 1989, Donna Hansen filed a verified "Charge of Discrimination" with the ICRC under the Iowa Civil Rights Act, Iowa Code Ch. 601A (1989). In that charge, Ms. Hansen alleged that Allen Memorial Hospital had violated the provisions of both state and federal law prohibiting age discrimination in employment. Ms. Hansen's Charge of Discrimination was cross-filed with the Equal Opportunity Employment Commission ("EEOC") under the provisions of the ADEA, 29 U.S.C. § 626(d).

Pursuant to statutory mandate, the ICRC commenced an investigation of the charge of discrimination.[5] At some juncture in this process, the ICRC made a determination that the evidence it had uncovered was such that a "full" investigation

was not warranted. It thus determined to "administratively close" the matter. After providing Ms. Hansen with advance notification of its intended action and receiving no response to its request for additional information, the ICRC proceeded to administratively close the case. Pursuant to § 601A.17, if a matter has been administratively closed by the ICRC a complainant may either immediately seek judicial review of the administrative agency action or, even if such relief is not sought, may procure an "administrative release," colloquially known as a "right-to-sue" letter from the ICRC within two years from the administrative closure. *See* Iowa Code § 601A.16(2) (1989).

On or about February 5, 1990, Ms. Hansen requested the ICRC to reopen its investigation. The ICRC did so, and proceeded to conduct a "full" investigation.

At the conclusion of this investigation, on November 1, 1990, an internal administrative law judge for the ICRC issued a finding of "no probable cause," pursuant to Iowa Code § 601A.15(3)(a) (1989). No appeal was taken by Ms. Hansen from this final agency action under the Iowa Administrative Procedures Act. *See* Iowa Code § 601A.17.[6]

On May 14, 1991, Ms. Hansen instituted suit against Allen Memorial Hospital in the United States District Court for the Northern District of Iowa, Civil No. C91–2037. In part, Ms. Hansen alleged in the lawsuit that Allen Memorial Hospital had unlawfully discriminated against her on the basis of age in violation of the ADEA. No claim was made by Ms. Hansen of a violation of the Iowa Civil Rights Act, Iowa Code Ch. 601A (1989).

---

**4.** Federal Rule of Civil Procedure 45(c)(3)(A) became effective December 1, 1991. It states in relevant part, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it: ... (iii) requires disclosure of privileged or otherwise protected matter and no exception or waiver applies, ..." *See* prior Fed.R.Civ.P. 45(d) (1990).

**5.** Section 601A.15(3)(a) Iowa Code (1989) provides that: "[a]n authorized member of the

commission staff shall make a prompt investigation and shall issue a recommendation to an administrative law judge under the jurisdiction of the commission...."

**6.** Under the provisions of Iowa Code § 601A.16(2), the issuance of a determination of "no probable cause" precludes the maintenance of an individual action under the Iowa Civil Rights Act.

After the commencement of the federal lawsuit, the hospital sought to obtain a copy of all of the materials in the ICRC files. Apparently, pursuant to agency policy, the ICRC provided photocopies of what it represented to be its entire file with the exception of tape recorded interviews.[7]

The hospital thereafter prepared a "Notice of Deposition" for the "Custodian of Records" of the ICRC and served it upon counsel as provided by Federal Rule of Civil Procedure 30(b). Because the Commission's principal place of business is in a district other than the Northern District of Iowa, the notice of deposition was filed with the court after leave for such was granted by U.S. Magistrate Judge Jarvey. That document was then used to procure a deposition subpoena from the United States District Court for the Southern District of Iowa.

The deposition subpoena, together with a tender of witness fees, was duly served. No records were provided; no deponent attended the noticed deposition. The "Motion to Quash Subpoena" was filed on or about December 2, 1991.

### III. ANALYSIS.

#### A. Applicable Law.

This issue arises in the context of a claim by Allen Memorial Hospital that the tape-recorded interviews contained in the

ICRC's files are subject to discovery. Discovery in civil litigation pending in a federal court is governed by the Federal Rules of Civil Procedure. The scope of discovery under the Rules is very broad. Federal Rule of Civil Procedure 26(b)(1) provides in relevant part: "[p]arties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." (emphasis applied.)[8]

The principles by which this court determined whether the tape-recorded interviews contained in the ICRC file are privileged—and, therefore, whether or not the tape-recorded interviews are subject to discovery—are set forth in Federal Rule of Evidence 501. Rule 501 controls which law, state or federal, should be applied and, thus, is the starting point in determining whether the limited confidential privilege asserted by the ICRC mandate that the materials sought by Allen Memorial Hospital are privileged. Rule 501 of the Federal Rules of Evidence provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the

7. At oral argument, counsel for the ICRC contended that the materials in Donna Hansen's ICRC file are confidential under state law and the agency's administrative regulation. She asserted that none of the several notable exceptions to the confidentiality of the ICRC file were applicable in Donna Hansen's case. Counsel indicated that the ICRC accommodated the parties here by providing them with all the information in the ICRC file except the tape-recorded interviews. This accommodation was based upon the fact that the parties could have obtained these materials from the EEOC—and that this information had been transmitted the ICRC to the EEOC in this case. The tape-recorded interviews are not transmitted by the ICRC to the EEOC. The EEOC has indicated to the ICRC that, because of the EEOC's limited storage capacity, they did not want to take possession of tape-recorded interviews. Had the EEOC accepted the tape-recorded interviews, these tapes would have been turned over to the parties by

the ICRC. This is so because the ICRC accommodates the parties by providing them materials from the ICRC file that they could have obtained from the EEOC's file.

8. There is some question whether the state law and administrative regulation relied upon by the ICRC simply provides for confidentiality or if they create a privilege. Some courts have made such a distinction. *See, e.g., Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1205 (9th Cir. 1975) ("The records are confidential but not privileged.") In *American Civil Liberties Union of Miss. v. Finch,* 638 F.2d 1336, 1342 (5th Cir. 1981), the court stated: "Even though the statute does not explicitly create an evidentiary privilege, but merely provides in general terms for the confidentiality ... we are willing to assume, for the sake of argument, that Mississippi courts would construe the statute as creating a privilege." This court is willing to make the same assumption here.

United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The claim for relief in this action is based primarily under the ADEA, 29 U.S.C. § 621 *et seq.* Hansen is also asserting pendent state law claims, although no claim under the Iowa Civil Rights Act, Iowa Code Ch. 601A (1989) is asserted. If this claim were brought solely under federal law, there would be no dispute that federal common law of privilege would control the question whether the limited confidential privilege asserted by the ICRC should be recognized. As the court stated in *Finch*, 638 F.2d at 1342–43:

> Evidentiary privileges in federal courts are governed by Federal Rule of Evidence 501. Except 'with respect to an element of a claim or defense as to which State law supplies the rule of decision', privileges 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' Since the only claims and defenses asserted here relate to federal § 1983 claims, the latter clause applies.

*See also, Moorhead v. Lane*, 125 F.R.D. 680, 682–83 (C.D.Ill.1989) ("Since state law does not supply the rule of decision, the question of whether the discovery materials sought are privileged is 'governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience.' Fed.R.Evid. 501."); *Unger v. Cohen*, 125 F.R.D. 67, 69 (S.D.N.Y.1989) ("Questions of privilege in cases involving federal claims are governed by federal law") (citations omitted); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988) ("Questions of privilege in federal civil rights cases are governed by federal law. *See* Fed.R.Evid. 501 ...") (citations omitted).

This case, however, does not arise solely under federal law. Thus, the issue here is whether the federal law of privilege controls the question whether the limited confidential state law privilege asserted by the ICRC should be recognized where, in addition to a federal law claim, pendent state law claims are asserted. Before determining whether to apply the federal law of privilege in a situation where a federal claim is accompanied by pendent state law claims, it is necessary to examine the legislative history of Federal Rule of Evidence 501.

### B. The Legislative History of Federal Rule of Evidence 501.

The legislative history of Federal Rule of Evidence 501 sheds but a glimmer of light on the question. The senate report, which accompanied Federal Rule of Evidence 501, expresses the most explicit statement whether the federal law of privilege controls when pendent state law claims are asserted. The senate report stated that "the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case." S.Rep. No. 1277, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 7051, 7059 n. 16 (1974).[9]

---

**9.** The senate report stated:

Another problem not entirely avoidable is the complexity or difficulty the rule introduces into the trial of a Federal case containing a combination of Federal and State claims and defenses, *e.g.*, an action involving Federal antitrust and State unfair competition claims. Two different bodies of privilege law would need to be consulted. It may even develop that the same witness-testimony might be relevant on both counts and privileged as to one but not the other.

The formulation adopted by the House is pregnant with litigious mischief. The committee has, therefore, adopted what we believe will be a clearer and more practical guideline for determining when courts should respect State rules of privilege. Basically, it provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced.[16] Conversely, in diversity cases where the litigation in question turns on a substantive question of State law, and is brought in the Federal courts because the parties reside in different States, the committee believes it is clear that State rules of privilege should apply unless the proof is di-

Several courts, in reviewing the legislative history of Federal Rule of Evidence 501, have relied solely on this explicit statement in footnote 16 of the senate report to support their view that the federal law of privilege should be applied with respect to federal question cases asserting pendent state law claims. *See, e.g., von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2nd Cir.), *cert. denied sub. nom., Reynolds v. von Bulow by Auersperg*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Pinkard v. Johnson*, 118 F.R.D. 517, 520 (M.D.Ala.1987). In this court's view, such reliance is seriously misplaced. This statement in the senate report, while clear, was made in reference to the senate's version of Federal Rule of Evidence 501,[10] which was rejected in the conference report. Conf. Rep. No. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7098, 7101. In *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–459 (D.C.Cal.1978) the court, in commenting on the effect of the statement in note 16 of the senate judiciary committee report stated:

> [t]his statement was made in reference to the Senate's version of Rule 501, which was rejected in the Conference Report. Consequently, the senate judiciary committee's statement provides no evidence of congressional intent with respect to Rule 501 as it was ultimately enacted.

*See also, Walker v. Lewis*, 127 F.R.D. 466, 469 (W.D.N.C.1989). ("The conference adopted the House version of Rule 501 and rejected the Senate's proposed amendment to the state law proviso....").

The conference report on Federal Rule of Evidence 501 states:

> Under the provision in the House bill, therefore, state privilege law will usually

apply in diversity cases. There may be diversity cases, however, where a claim or defense is based upon federal law. In such instances, federal privilege law will apply to evidence relevant to the federal claim or defense. *See Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173 [63 S.Ct. 172, 87 L.Ed. 165] (1942).

In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law. As Justice Jackson has said: "A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 471 [62 S.Ct. 676, 685–86, 86 L.Ed. 956] (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply. *See* C.A. Wright, *Federal Courts* 251–252 (2d ed.1970); *Holmberg v. Armbrecht*, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743] (1946); *DeSylva v. Ballentine*, 351 U.S. 570, 581 [76 S.Ct. 974, 980, 100 L.Ed. 1415] (1956); 9 Wright & Miller, *Federal Rules and Procedure* § 2408.

In civil actions and proceedings, where the rule of decision as to a claim or

---

rected at a claim or defense for which Federal law supplies the rule of decision (a situation which would not commonly arise.) It is intended that the State rules of privilege should apply equally in original diversity actions and diversity actions removed under 28 U.S.C. § 1441(b).

S.Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 7051, 7059. (footnotes omitted except footnote 16.)

**10.** The Senate's version provided in part: "[h]owever, in civil actions and proceedings, arising under 28 U.S.C. § 1332 or 28 U.S.C. § 1335, or between citizens of different States and removed under 28 U.S.C. § 1441(b), the privilege of a witness, person, government, State or political subdivision thereof is determined in accordance with State law, unless with respect to the particular claim or defense, Federal law supplies the rule of decision."

defense or as to an element of a claim or defense is supplied by state law, the House provision requires that state privilege law apply.

Conf.Rep. No. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7101.

Unfortunately, this conference report on Rule 501 does not specifically address the problem of conflicting federal and state privilege law in the context of pendent state law claims. 1974 U.S.Code Cong. & Admin.News 7100–7101. As the court observed in *Walker*, 127 F.R.D. at 469, "it is impossible to know whether Congress also rejected the Senate's suggestion on how to resolve problems of conflicting privileges." Therefore, the issue now before the court cannot be resolved based upon the legislative history of Rule 501.

### C. The Federal Law of Privilege Applies.

■ Given the absence of any specific indication in the conference report on Rule 501, the court believes that in federal question cases where pendent state law claims are raised, the federal law of privileges should govern all claims of privilege raised in the litigation—at least where the issue is the discoverability of evidence.[11]

Where the issue is the discoverability of evidence in federal question litigation which is relevant to federal claims and to pendent state law claims, courts have consistently held that the asserted privileges are governed by principles of federal law. *E.g., von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n. 3 (7th

Cir.1981); *First Federal Sav. & Loan v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 560 (S.D.N.Y.1986); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D.Del.1985); *Dorsten v. Lapeer County General Hospital*, 88 F.R.D. 583, 586 (E.D.Mich.1980); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 494–95 (S.D.Fla. 1980); *F.D.I.C. v. Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345, 349 (N.D.Ill.1979); *Robinson v. Magovern*, 83 F.R.D. 79, 84–85 (W.D.Pa.1979); *Lewis v. Capital Mtg. Investments*, 78 F.R.D. 295, 312–13 (D.Md. 1978); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D.Cal. 1978). The Eighth Circuit Court of Appeals does not appear to have addressed this question.

There is sound logic for this view. Application of the federal law to claims of state privilege in federal question cases with pendent state law claims prevents the inconsistent application of state law privilege claims in the same case. As the court stated in *Perrignon*, 77 F.R.D. at 458, "[i]f a communication were privileged under state law but not under federal law, or if a communication were privileged under federal law but not under state law, it would be meaningless to hold the communication privileged for one set of claims but not for the other." Thus, the federal law of privilege controls even when pendent state law claims are asserted.[12]

### D. Application of Federal Common Law of Privilege in this Case.

Whether the discovery materials sought by Allen Memorial Hospital are subject to a limited confidential privilege is "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

11. The court need not address whether it would reach a different result with regard to the admissibility of the tape-recorded interviews at trial. That question is premature. *See Walker,* 127 F.R.D. at 470 for a discussion of this issue at different stages of the litigation—discoverability as distinguished from admissibility of evidence at trial.

12. This approach is most consistent with the policy of Rule 501. That policy is that "[i]n

non-diversity jurisdiction civil cases, federal privilege law will generally apply." Conf.Rep. No. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7101. This approach is also consistent with the suggestions of professors Wright and Graham. 23 C. Wright & K. Graham, *Federal Practice and Procedure:* § 5434 at 862–64 (1980). *See also,* discussion of Wright & Miller approach in *Walker,* 127 F.R.D. at 469–470.

■ Just because this court concludes it is not required to apply the state law of privilege, however, does not mean "that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." *Shadur*, 664 F.2d at 1061; *Lane*, 125 F.R.D. at 682. This is true because "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Shadur*, 664 F.2d at 1061; *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976); *Lane*, 125 F.R.D. at 682–83. Thus, when a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Lane*, 125 F.R.D. at 683; *Shadur*, 664 F.2d at 1061 (quoting *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y.1977)). However, "[t]hat the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege." *Finch*, 638 F.2d at 1343.

■ Federal courts have "established several factors courts should consider in making a privilege determination under Rule 501 of the Federal Rules of Evidence." *Lane*, 125 F.R.D. at 683. First, because evidentiary privileges, such as the one at issue here, exclude potentially relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. *Shadur*, 664 F.2d at 1061; *Lane*, 125 F.R.D. at 683; *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090,

3108–09, 41 L.Ed.2d 1039 (1974). Indeed, "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon*, 418 U.S. at 710, 94 S.Ct. at 3108 (1974) (rejecting absolute Presidential privilege).

■ Second, in deciding whether a federal court should recognize the state privilege, it is important to take into consideration "the particular factual circumstances of the case in which the issue arises." *Lane*, 125 F.R.D. at 683; *Shadur*, 664 F.2d at 1061. Thus, the federal court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Shadur*, 664 F.2d at 1061 (citing *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *Lane*, 125 F.R.D. at 683).[13] *See also In re Production of Records to Grand Jury*, 618 F.Supp. 440, 442 (D.Mass. 1985) ("The purpose and force of the particular federal interest involved must be balanced against the rationale and comparative strength underlying the particular evidentiary privilege claimed.") In sum, "[b]ecause no federal rule exists governing the kinds of privileges asserted in these cases, ... the magistrate must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation." *King*, 121 F.R.D. at 187.

With the above discussion in mind, the court will now determine whether the state

---

**13.** Other courts have promulgated a four part test incorporating Wigmore's classic utilitarian formulation of the conditions for recognition of a testimonial privilege. The Wigmore test is: (1) The communications must originate in a *confidence* that they will not be disclosed; (2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties; (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered;* and (4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the

correct disposal of litigation. Only if these four conditions are present should a privilege be recognized. *See, e.g., Finch*, 638 F.2d at 1344; *Garner v. Wolfinbarger*, 430 F.2d 1093, 1100 (5th Cir.1970), *cert. denied sub. nom., Garner v. First American Life Ins. Co.*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) *(quoting 8 J. Wigmore, Evidence, § 2285 at 527 (McNaughton rev. 1961));* In re Production of Records to Grand Jury, 618 F.Supp. 440, 443 (D.Mass.1985). The court did not directly use this formulation in reaching its decision. However, under the facts of this case, the ICRC's claim would have failed each of the four prongs of the Wigmore test.

law limited confidential privilege asserted by the ICRC should be recognized.

At oral argument, counsel for the ICRC identified the "integrity of its process" and the need for confidentiality in its investigations as the governmental interest purportedly served and advanced by the confidential privilege here at issue. In its post-hearing brief, the ICRC expands upon this governmental interest when it states:

> In adopting the confidentiality provisions of Iowa Code section 601A.15(4), the legislature preserved the integrity of ongoing investigations and prevented interference with them; the provision protects witnesses from retaliation as well as safeguarding the privacy of the individuals under investigation.

Supplemental Brief in Support of Motion of ICRC to Quash Subpoena, pp. 2–3.

 Upon careful examination, the court is unpersuaded that the enforcement of a limited confidential privilege under the facts developed by this record outweighs the "federal interest in seeking the truth through rigorously independent federal procedures ..." *Finch*, 638 F.2d at 1343. Allen Memorial Hospital and the ICRC have identified numerous instances in which tape-recorded interviews of witnesses maintained in the ICRC files would be discoverable by the parties. *See supra* note 3. Indeed, it is more likely that parties will ultimately be able to obtain the entire investigative file, including tape-recorded interviews, than that they will not be allowed to obtain this information. It appears that only in the factual scenario present here—where the ICRC has made a finding of no probable cause and that determination is not appealed—will the parties to an ICRC proceeding not have free access to all information contained in the ICRC files. This fact alone significantly undermines the governmental interest supporting the limited confidential privilege asserted by the ICRC. The ICRC does not contend that its files are always confidential to the parties participating in the investigation of a charge of discrimination. If confidentiality were the norm rather than the exception, the arguments in favor of respecting the limited confidential privilege would be much more compelling.

Any claim by the ICRC that confidentiality is necessary to ensure the integrity of the investigative process is wholly illusory. Neither at its outset nor during the course of an investigation is a witness ever promised confidentiality as an inducement to provide information to the ICRC. This is so because the majority of the procedural contingencies arising under the Iowa Civil Rights Act result in the parties having full access to the ICRC files—including tape-recorded interviews of witnesses. In these situations, there simply is no confidentiality.

The governmental interest in support of the limited confidential privilege articulated by the ICRC is further undermined for two additional reasons. First, but for the EEOC's refusal to accept the tape-recorded interviews from the ICRC due to lack of storage, these tape-recorded interviews would have been made available to the parties in one of two ways. Either the parties could have attained the tape-recorded interviews from the EEOC directly or they could have obtained them from the ICRC pursuant to their policy of accommodating the parties by providing them information from their files that they could otherwise obtain from the EEOC. Thus, it is difficult for the court to understand why a limited confidential privilege should be enforced—when the materials remain confidential based solely upon the size of the EEOC's storage facility.

Secondly, the ICRC supplied the parties with the list of questions asked each individual in the tape-recorded interviews. The list of questions contained notations, written down by the investigator, of the responses of individuals who were being tape-recorded.[14] Thus, this is not a situation when a "state holds out the expectation of protection to its citizens...."

---

14. The parties have not raised the question of whether this significant disclosure of information by the ICRC waives their claim to confidentiality regarding the tape-recorded interviews themselves. Therefore, the court expresses no opinion on this issue.

Lane, 125 F.R.D. at 683; Shadur, 664 F.2d at 1061 (quoting Lora v. Board of Educ., 74 F.R.D. 565 (E.D.N.Y.1977)). The opposite is true. There is no guarantee of confidentiality and, thus, no expectation of protection to the citizens of Iowa. Thus, the governmental interest asserted by the ICRC in "safeguarding the privacy of the individuals under investigation" would not be advanced by enforcement of the state law limited confidential privilege.

In support of its position, the ICRC relies heavily upon the decision in Shabazz v. Scurr, 662 F.Supp. 90 (S.D.Iowa 1987). In Shabazz, the court found that a provision in the state ombudsman's statute, Iowa Code § 601G.8 (1985), created a limited privilege against a former prison ombudsman to prevent his disclosure in court of communications he received while in that office. Id. at 91–92. The court, relying on Federal Rule of Evidence 501, enforced this privilege in an action brought pursuant to 42 U.S.C. § 1983. Id. Contrary to the assertion by the ICRC, the decision in Shabazz neither supports their position nor compels a conclusion that the limited confidential privilege asserted here should be enforced by this court.

The critical premise for the court's holding in Shabazz was its belief that "the flow of information to the office from citizens would be threatened if it became known that the statutory assurances of general confidentiality would not be respected in federal court." Id. at 92. Unlike the statute at issue in Shabazz, here there is not a general promise of confidentiality to individuals providing information to the ICRC. Therefore, Shabazz is not only clearly distinguishable but is consistent with the court's holding here. The ICRC has simply failed to establish that if this court does not apply the limited confidential privilege it would in any way reduce the likelihood that individuals would provide information to the ICRC. Moreover, because the limited confidential privilege applies to some but not all cases before the ICRC, there is little likelihood that the ICRC could ever make such a factual showing.

## IV. CONCLUSION.

In sum, weighing the need for truth against the importance of the policy sought to be furthered by the confidential privilege, the court concludes that the limited confidential privilege asserted by the ICRC will not be upheld in the factual setting of this case. The ICRC's asserted governmental interests in the integrity of its investigative process and in its need for confidentiality are far too attenuated to uphold the assertion of the state law limited confidential privilege at issue. For the reasons set forth above, application of the limited confidential privilege to the circumstances of this case would not further any of the governmental interests advanced by the ICRC. These governmental interests "must yield when outweighed by federal interests in presenting relevant information to a trier of fact...." United States v. One Parcel of Property at 31–33 York St., 930 F.2d 139, 141 (2nd Cir.1991). The ICRC's Motion to Quash the subpoena and its request for a protective order are denied.

IT IS SO ORDERED.