Wendy Lee MOORHEAD, Ruthe Carbona, Lajuana Lampkins, all others similarly situated, Plaintiffs,

v.

Michael P. LANE and Jane Huch, Defendants.

No. 86–2020.

United States District Court, C.D. Illinois, Danville Division.

April 29, 1989.

---

John F. Kennedy and Maria Woltjen, Chicago, Ill., for plaintiffs.

Marita C. Sullivan and Susan O'Leary, Asst. Attys. Gen., Chicago, Ill., for defendants.

## ORDER

BAKER, Chief Judge.

### I. BACKGROUND

This is a civil rights class action for declaratory and injunctive relief brought pursuant to the Equal Protection Clause of the Fourteenth Amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983. The plaintiffs are prisoners confined at Dwight Correctional Center (the only female correctional facility operated by the State of Illinois). The plaintiffs contend that there is a great discrepancy between the treatment, programs, and opportunities available to male and female prisoners, and that this discrepancy violates the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs seek to compel the Illinois Department of Corrections (defendants) to produce certain preview budget reports. Fed.R.Civ.P. 37(a)(2) and 37(a)(4), and the defendants seek to compel the plaintiffs to answer questions concerning discussions among themselves and inmates Patricia Wheeler and Rebecca Fuller.

Two questions are before the court:

1. Whether the Illinois Department of Corrections must produce:

  a. Budget Submissions filed with the Fiscal Department of the Department of Corrections which provide a basis for the annual budget submitted to the Illinois Legislature;

  b. Fiscal Year Budget Preview dated October 26, 1987; and

  c. Incident reports for each institution. (See p. 2 of Second Revised motion.)

2. Whether the plaintiffs must answer questions concerning discussions among themselves and inmates Patricia Wheeler and Rebecca Fuller.

### II. EXECUTIVE PREDECISIONAL DELIBERATIVE PROCESS PRIVILEGE

The court has carefully reviewed the respective memoranda. In sum, the defendants argue that the budget submissions in question constitute "intra-agency memoranda and documents recording the deliber-

ative process leading to" the Department of Corrections' final budget decisions. Consequently, they argue that these budget submissions are privileged under the executive predecisional deliberative process privilege. In support they cite numerous cases.

The plaintiffs, on the other hand, argue that the defendants have failed to assert the executive privilege properly and, in the alternative, that the executive privilege should be overridden because the plaintiffs' need for the documents at issue outweighs the defendants' interest in non-disclosure.

█ Both parties have extensively briefed these issues, citing a plethora of case law attempting to support their positions. Unfortunately, however, the authorities cited are readily distinguishable from the case at bar and did not aid the court in reaching a decision. The cases cited deal either with federal agencies that have or do not have the privilege, or with questions under the Freedom of Information Act or similar statutes. This case concerns a state agency. It is not correct to say that because certain privileges exist for federal agencies or exist under the federal Freedom of Information Act, the same privileges exist for state agencies. That argument could be made, but the defendants have not made it and the court is unwilling to make it for them. Thus, the defendants have failed to persuade the court that the privilege they assert exists.

The plaintiffs' arguments to compel discovery also fail because their opposition to the executive predecisional deliberative process privilege assumes that the privilege exists in state government. Instead of arguing that the court should not recognize an executive predecisional deliberative process privilege for state agencies, the plaintiffs' memoranda argue that the privilege does not apply in this instance. Neither side has addressed the threshold issue of whether such a privilege exists for state agencies. The court will address that issue.

Rule 26 of the Federal Rules of Civil Procedure governs discovery in civil actions brought in federal court. Generally speaking, the scope of discovery is very broad. Rule 26(b)(1) states that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Rule 501 of the Federal Rules of Evidence is the starting point in determining whether materials sought in discovery are privileged. Rule 501 provides in full that:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules proscribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

█ The claim for relief in this action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1977). Since state law does not supply the rule of decision, the question of whether the discovery materials sought are privileged is "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Just because the court is not required to apply the state law of privilege, however, does not mean "that federal courts should not *consider* the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981) (emphasis added). In fact, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital for McHenry*

*County v. Shadur,* 664 F.2d at 1061, *quoting United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976). Accordingly, when a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d at 1061, *quoting Lora v. Board of Education,* 74 F.R.D. 565 (E.D.N.Y.1977).

The Seventh Circuit has established several factors courts should consider in making a privilege determination under Rule 501 of the Federal Rules of Evidence:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will, in fact, protect that relationship in the factual setting of the case." (Citation omitted.)

*Memorial Hospital for McHenry County v. Shadur,* 664 F.2d at 1061.

█ With this in mind, the court will now determine whether the privilege asserted, in its proper factual context, is recognized or should be recognized. Secondly, the court will determine whether, if in fact such privilege is recognized, it should protect the materials sought in this matter.

The court first turns to Illinois law to see if the Illinois courts or legislature have addressed the privilege at issue in this case. After extensive research, the court has been unable to find anything directly on point. Neither the Illinois courts nor the Illinois State Legislature has addressed this precise issue. The Illinois Administrative Procedure Act, Ill.Rev.Stat. ch. 127,

¶¶ 1001–1021 (Supp.1988) and the Illinois Freedom of Information Act, Ill.Rev.Stat. ch. 116, ¶¶ 201–211 (1988), however, provide the court with some guidance as to what the policy might be in Illinois regarding the proffered privilege.

Section 1004(2)(b) of the Illinois Administrative Procedure Act provides that agencies must:

> 2. Make available for public inspection all rules adopted by the agency in the discharge of its functions.
>
> (b) Each agency shall make available for public inspection all final orders, decisions and opinions, except those deemed confidential by state or federal statute and any trade secrets.

*Id.* The court infers from this affirmative requirement to publish *final* rules that materials considered in reaching the final rule need not be disclosed.

The Illinois Freedom of Information Act, Ill.Rev.Stat. ch. 116, ¶¶ 201–211 (1988), provides even greater insight into the general policy in Illinois regarding the status of materials that lead to a final decision. Specifically, ¶ 207(f) exempts from inspection and copying:

> Preliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated, except that a specific record or relevant portion thereof shall not be exempt when the record is publicly cited and identified by the head of the public body....

*Id.* It is clear from the Illinois Freedom of Information Act that materials that express an opinion or a recommendation that lead to a final decision are exempt from the inspection and copy requirements of the Illinois Freedom of Information Act.

The court recognizes that neither the Illinois Administrative Procedure Act nor the Illinois Freedom of Information Act addresses discovery and litigation. Nevertheless, they do express the general policy in Illinois regarding such materials and are persuasive in deciding whether a privilege should be recognized in this case.

In *IELRB v. Homer Comm. Cons. Sch. Dist.*, 160 Ill.App.3d 730, 112 Ill.Dec. 802, 514 N.E.2d 465 (4th Dist.1987), the Illinois Appellate Court for the Fourth District undertook a similar policy analysis in ruling on a request for production. The court, interpreted the Illinois Open Meetings Act, Ill.Rev.Stat. ch. 102, ¶ 42 (1985), and the Illinois Freedom of Information Act, Ill. Rev.Stat. ch. 116, ¶ 203 (1985) in order to decide whether a privilege should be recognized for a school district's deliberations during a labor dispute.

> Even though we do not deem the cited provisions of the Open Meetings Act and the Freedom of Information Act to have spoken to the question of whether the deliberations of the protected meetings where collective-bargaining strategy was discussed were immune from discovery for litigation purposes, we do consider that legislation to have indicated a strong public policy to protect the confidentiality of those deliberations. The concepts of collective bargaining include a recognition of disparity of interests involved which, inherently, makes the bargaining process an adversarial one at times. The process is damaged if the parties cannot plan their bargaining strategy under circumstances where they have a reasonable expectation of confidentiality. Allowance of that confidentiality does not in any way hinder the opportunity of the parties to respect each other and to recognize their common interests.

*IELRB v. Homer Comm. Cons. Sch. Dist.*, 160 Ill.App.3d at 737, 112 Ill.Dec. 802, 514 N.E.2d 465. The court went on to hold that this policy supported a "qualified privilege subject to necessity...." *Id.* at 739, 112 Ill.Dec. 802, 514 N.E.2d 465.

Based on the foregoing discussion, the court concludes that a general policy exists in the State of Illinois against requiring the disclosure of predecisional materials. Is such a privilege recognized by federal common law?

The court's research has not found a Seventh Circuit precedent that establishes an executive predecisional deliberative process privilege for state agencies. The court has, however, found cases from both the Seventh and other circuits that recognize an executive predecisional deliberative process privilege for *federal* agencies. *King v. IRS*, 684 F.2d 517 (7th Cir.1982); *Mobil Oil Corp. v. Dept. of Energy*, 102 F.R.D. 1, 4 (N.D.N.Y.1983); *In Re Franklin National Bank Securities, Lit.*, 478 F.Supp. 577, 580–83 (E.D.N.Y.1979); *United States v. Exxon Corp.*, 87 F.R.D. 624, 637 (D.D.C.1980)[1]; *Kansas State Network, Inc. v. FCC*, 720 F.2d 185, 191 (D.C.Cir. 1983); *N.O. v. Callahan*, 110 F.R.D. 637, 641–43 (D.Mass.1986). (This case is factually similar to the case at bar since it too involves a state agency rather than a federal agency.) While the cited cases are factually distinguishable from the case at bar, the court finds their reasoning persuasive in determining whether an executive predecisional deliberative process privilege should be recognized in this matter.

The court finds Judge Weinstein's analysis in *In Re Franklin National Bank Securities Lit.*, 478 F.Supp. 577 (E.D.N.Y. 1979), particularly persuasive. In that case, Judge Weinstein discussed the policy underlying the intragovernmental opinion privilege:

> The primary rationale for the intragovernmental opinion privilege is that effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders. The theory is not unlike that supporting the attorney/client privilege, (citations omitted), the psychotherapist/patient privilege, (citations omitted),

---

1. It should be noted that in ¶¶ 12 and 13 on page 637, the court states that, "[W]e do not believe that the affidavit need be sworn by the head of the agency. Instead, it may be sworn by an official, with delegated authority from the Secretary, to assert such representations." The court notes this merely to rebut the plaintiff's position that the head of the agency must assert the privilege citing *Mobil Oil Corp. v. Dept. of Energy*, 102 F.R.D. at 5–6. The court does not find *Mobile Oil Corp.* controlling on that matter. The court holds instead that the head of the agency need not assert the privilege. It is sufficient that an agency representative do so.

or the husband/wife privilege (citation omitted).

The assumption is that "government, no less than the citizen, needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning." (Citations omitted.) Without frank, confidential discussion between subordinates and their superiors, "crucial decisions may be made with insufficient knowledge or inadequate advice." (Citations omitted.)

A subsidiary theory supporting the official information privilege relies upon a related, though still distinct principle: "The judiciary ... is not authorized 'to prove the mental processes' of an executive or administrative officer." (Citations omitted.) This principle forbids judicial investigation into "the methods by which a decision is reached, the matters considered, [and] the contributing influences over the role played by the work of others." (Citation omitted.) Unlike the first ground, which rests upon pragmatic considerations of efficiency and effectiveness, this second justification draws upon constitutional considerations, derived from the doctrine of separation of powers. (Citations omitted.)

Implicit in the two theories upon which the official information privilege rests is an important limitation upon its scope. The privilege protects only expressions of opinions or recommendations in intra-governmental documents; it does not protect purely factual material. (Citations omitted.) Disclosure of facts would neither hinder the free flow of advice in government decision making nor involve improper judicial interference with that process. Only the protection of opinions, recommendations and analyses furthers these two goals. Of course, as noted below, the line between "fact" and "opinion," here as elsewhere in the law, is neither distinct nor fixed.

Even when the government asserts the official information privilege with respect to opinions or recommendations, non-disclosure is not guaranteed. The official information privilege is a qualified privilege; it is not absolute. "[T]he privilege is a discretionary one that depends upon *ad hoc* considerations of competing policy claims." (Citations omitted.) Strong competing interest must be weighed against the government's interest in non-disclosure. Foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding. (Citations omitted.) Thus, "the potential value to the private litigant of the requested production" must be carefully weighed. (Citation omitted.)

There is in addition, in some circumstances, a public interest in opening for scrutiny the government's decision making process. As Justice Brennan has recently observed, a paradox inheres in the privilege's rationale: "So as to enable the government more effectively to implement the will of the people, the people are kept in ignorance of the workings of their government." *Herbert v. Lando,* 441 U.S. 153, 195, 99 S.Ct. 1635, 1659, 60 L.Ed.2d 115 (1979) (dissenting opinion). Government documents are protected from discovery so that the public will benefit from more effective government; when the public's interest in effective government would be furthered by disclosure, the justification for the privilege is attenuated. Thus, for example, where the documents sought may shed light on alleged government malfeasance, the privilege is denied. (Citations omitted.)

Given this clash of strong competing interest, the official information privilege usually requires examination of the documents *in camera.* (Citations omitted.) The Supreme Court's Proposed Rule 509(c) provided for *in camera* inspection; usually only after such an examination can the court determine whether the government's interest in non-disclosure outweighs the interests of the litigants and public in disclosure. (Citations omitted.)

In this balancing of competing interests, some of the factors that assume significance are: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence (citations

omitted); (iii) the "seriousness" of the litigation and the issues involved (citation omitted); (iv) the role of the government in the litigation (citations omitted); and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*In Re Franklin National Bank Securities Lit., Id.* at 580-83.

The policy underlying the privilege recognized in federal courts for federal agencies supports the argument that the same privilege should be recognized for state agencies. This, combined with the emerging policy in the state of Illinois for recognition of such a privilege, persuades the court that it is proper to recognize an executive predecisional deliberative process privilege for state agencies. Having recognized an executive predecisional deliberative process privilege for state agencies, the court must determine, consistent with the factors discussed by the Seventh Circuit in *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d at 1061, and by Judge Weinstein in *In Re Franklin National Bank Securities Lit.,* 478 F.Supp. at 580-83, whether the materials sought by the plaintiffs are privileged. Accordingly, the court orders the defendants to submit the requested discovery material for *in camera* inspection. After inspection, the court will determine whether or not the materials requested are in fact privileged.

III. ATTORNEY/CLIENT PRIVILEGE

■ The plaintiffs argue that the attorney/client privilege should be extended to communications made to a "jailhouse attorney." "The basis for the [attorney/client] privilege is to afford the client a reasonable expectation of privacy and confidentiality with regard to disclosures made during the course of consultations with his attorney." *In Re January 1976 Grand Jury,* 534 F.2d 719, 728 (7th Cir.1976). While it appears at first glance that the rationale for the privilege might apply to the case at bar as well, the Seventh Circuit has made it clear that a professional relationship must exist as a prerequisite to an assertion of the privilege. *Radiant Burners, Inc. v. American Gas Association,* 320 F.2d 314, 319 (7th Cir.1963), *cert. denied* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). Neither Ms. Trammell nor Ms. Wheeler is a lawyer. While it is true that Ms. Trammell has a law degree from the University of Denver, neither she nor Ms. Wheeler are members of the Illinois bar. As a result, any legal advice that was given was not "from a professional legal adviser in his capacity as such." *Id.* at 319. Accordingly, the court finds that the attorney/client privilege does not apply to the communications sought in this matter and orders the plaintiffs to comply with the defendants' discovery requests.

Despite the foregoing, the plaintiffs contend that under the Supreme Court's decisions in *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 748-49, 21 L.Ed.2d 718 (1969), and *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), failure to recognize the privilege would deny them meaningful access to the courts. First, the plaintiffs argue that incarcerated individuals have a right to meaningful access to the courts, *Id.* at 822, 97 S.Ct. at 1495, and that access to the courts may not be denied or obstructed. *Johnson v. Avery,* 393 U.S. at 485, 89 S.Ct. at 749. The plaintiffs argue that based on the foregoing cases, failure to extend the attorney/client privilege to communications between the inmates and the paid inmate law clerks would effectively inhibit the inmates' access to the courts in direct contravention of the Supreme Court's holdings in *Bounds* and *Johnson.* The court disagrees.

In *Bounds v. Smith,* 430 U.S. at 828, 97 S.Ct. at 1498, the Court held:

[T]hat the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

The Dwight Correctional Center has satisfied the mandates of *Bounds v. Smith.* It

provides both an adequate law library and legal assistance.

In *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Supreme Court held that a state may not enforce a regulation that bars inmates from furnishing legal assistance to other prisoners. *Id.* at 490, 89 S.Ct. at 751. The plaintiffs cite *Johnson v. Avery* for the proposition "that access of prisoners to the courts ... may not be denied or obstructed." *Id.* at 485, 89 S.Ct. at 749. The plaintiffs argue that failure to recognize a privilege for the communications sought in this matter would in effect obstruct the plaintiffs' access to the courts. The court does not agree. Unlike the situation the Court addressed in *Johnson v. Avery*, there are no regulations in effect at the Dwight Correctional Facility that obstruct the plaintiffs' access to the courts. The court concludes that the plaintiffs are not denied "meaningful access" to the courts by failing to attach an attorney/client privilege to communications with inmate law clerks.

Second, the plaintiffs argue that "under the reasoning of *People v. Brisbon*, 89 Ill.App.3d 513, 44 Ill.Dec. 590, 411 N.E.2d 956 (1st Dist.1980), the communications between inmates and the paid inmate law clerks provided by the Illinois Department of Corrections in fullfillment of its duty under *Bounds* and [*Johnson*] should be protected under the attorney/client privilege." The court does not find that argument at all persuasive. First, as the plaintiffs admit in their memorandum, the *People v. Brisbon* court did not decide the issue of whether the attorney/client privilege protects disclosure of information related to a "jailhouse attorney." Second, in actions where state law does not supply the rule of decision, a federal court is not required to apply the state law of privilege. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d at 1061.

Finally, the plaintiffs argue that "in the alternative, *pro se* plaintiffs' communications with each other in a class action lawsuit must be afforded protection under the attorney/client privilege because *pro se* litigants should not be penalized for serving as their own counsel." The plaintiffs cite no authority for this *ipse dixit* argument. Moreover, the plaintiffs have been represented by licensed attorneys from the inception of this lawsuit. The argument is without merit.

IT IS THEREFORE ORDERED that the defendants produce the requested documents within thirty (30) days for the court's *in camera* inspection.

IT IS FURTHER ORDERED that the defendants' motion to compel is granted. The plaintiffs are ordered to answer questions concerning discussions between themselves and their jailhouse attorneys.