**Brenda SCOTT, et. al., Plaintiffs,**

v.

**Jerry LEWIS, et. al., Defendants.**

**No. 90 C 6744.**

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1991.

Adrian Mazar, Kevin Rogers, Chicago, Ill., for plaintiffs.

Rolland Burris, Corinth Bishop, General Law Div., Chicago, Ill., for Nikki Zollar.

Anthony G. Barone, Edward F. Ruberry, Bolinger & Ruberry, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

EDWARD A. BOBRICK, United States Magistrate Judge.

Before the court is the motion of deponent Nikki Zollar, Director of the Illinois Department of Professional Regulation ("Director") for a protective order that certain documents targeted by plaintiff's subpoena are not discoverable, pursuant to Illinois law.

Plaintiffs bring this action under 42 U.S.C. § 1983, to redress the shooting death of the decedent, Stanley Scott, which allegedly occurred at the hands of four defendants who were employed as Chicago Housing Authority security guards. The instant discovery dispute arose when plaintiff caused a subpoena to issue to the Di-

rector on January 22, 1991, calling for production of certain Department of Professional Regulation records on the four defendant security guards. The requested records include:

> applications, authorizations, permits, licenses, complaints, registrations, weapon qualification records, applications for firearm authorization card(s), all applications for renewal(s) and training certifications in your custody and control.
>
> Further, any and all documents, including but not limited to witness statements, objects, tangibles, reports in compliance with section 15(f)(5), paragraph 2665, of the Private Detective, Private Alarm and Private Security Act, complaint incident and administrative review reports, police reports, weapons discharge reports, Chicago Housing Authority reports and relevant correspondences and other documents pertaining to the incident of the shooting of Stanley Scott on May 23, 1990 at 2111 West Lake Street, Chicago, Illinois by employee(s) of the SES Security Co. Inc. and accordingly reported to your office in compliance with the above statute, in your custody and control.

(Motion for Rule to Show Cause, Ex.A). The subpoena, further, requested compliance by February 22, 1991. According to plaintiff, the Director offered no response by that date. The Director claims that although the subpoena was defective,[1] she nevertheless sought to comply, in good faith with the document requests. As of April 4, 1991, the Director had produced a portion of the documents requested and explaining that the rest were not discloseable.

The Director now moves for a protective order as to those remaining, purportedly non-discloseable, documents, arguing that they are privileged. The Director claims that these allegedly privileged documents include bank accounts, credit histories, medical histories, criminal histories, and fingerprint cards, and are non-discloseable

---

**1.** Although the Director has not moved to quash the subpoena, she contends that she is not the proper individual whom should have been served, and that the subpoena was served outside this court's jurisdiction.

under Illinois law, citing Ill.Rev.Stat.1989, Ch. 116 ¶ 207 § 7. That statute provides, in pertinent part:

The following shall be exempt from inspection and copying:

\* \* \* \* \* \*

(b) Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless such disclosure is consented to in writing by the individual subjects of such information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:

\* \* \* \* \* \*

(iii) files and personal information maintained with respect to any applicant, registrant or licensee by any public body cooperating with or engaged in professional or occupational registration, licensure or discipline;

\* \* \* \* \* \*

(d) Criminal history record information maintained by State or local criminal justice agencies except the following which shall be open for public inspection and copy:

(i) chronologically maintained arrest information, such as traditional arrest logs or blotters;

(ii) the name of a person in the custody of a law enforcement agency and the charges for which that person is being held;

(iii) court records which are public;

(iv) records which are otherwise available under State or local law; or

(v) records in which the requesting party is the individual identified, except as provided under Section 7(c)(vii) of this Act. "Criminal history record information" means data identifiable to an individual and consisting of descriptions or notations of arrests, detentions, indictments, informations, pre-trial proceedings, trials, or other formal events in the criminal justice system or descriptions or notations of criminal charges (including criminal violations of local municipal ordinances) and the nature of any disposition arising therefrom, including sentencing, court or correctional supervision, rehabilitation and release. The term does not apply to statistical records and reports in which individuals are not identified and from which their identities are not ascertainable, or to information that is for criminal investigative or intelligence purposes.

\* \* \* \* \* \*

Based on these provisions, the Director maintains that the documents withheld from discovery are privileged.

■ Under Rule 26(b) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." The burden of establishing the existence of a privilege concerning requested materials is on the party resisting disclosure. *See, e.g., Holifield v. United States,* 909 F.2d 201, 204 (7th Cir.1990) (attorney-client privilege); *United States v. Schwimmer,* 892 F.2d 237, 244 (2nd Cir.1989) (accountant-client privilege); *Perry v. Wabash Community Hosp.,* No. 90–377 (N.D.Ind. Feb. 25, 1991) 1991 WL 79569, \*2, 1991 U.S. Dist. LEXIS 6383, \*4 (physician-patient privilege); *Sullivan v. Helene Curtis, Inc.,* 135 F.R.D. 166, 168 (N.D.Ill.1991) (privileges generally). In this case, the Director apparently seeks to establish the existence of a privilege concerning communications between applicants or licensees and professional registration authorities. We find that, in this case, the Director has failed in her burden of establishing the existence of any such privilege.

■ In the federal courts, the existence of a privilege is governed by Rule 501 of the Federal Rules of Evidence, which provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of

the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

Fed.R.Evid. 501; *see also University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 188–89, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990). Because this is a federal question case—brought under 42 U.S.C. § 1983—the common law as applied by the federal courts will determine the validity of the privilege the Director invokes. *Id.; Sullivan*, 135 F.R.D. at 167; *Jennings v. D.H.L. Airlines*, 101 F.R.D. 549, 550 (N.D.Ill. 1984). The Illinois statutory provisions, consequently, are of no moment to this determination.[2]

■ We know of no case—and the Director has failed to suggest one—in which the court found the type of privilege to exist which the Director seeks to invoke here. Thus, we are put in the position of determining whether to establish a new privilege. The Supreme Court itself has been disinclined to expand the law regarding privilege, *University of Pennsylvania*, 110 S.Ct. at 582, and we feel we are in no better a position than the High Court to undertake such a task with enthusiasm. Nevertheless, we note that such a determination, if made, must be done by weighing the need for truth against the importance of the relationship or the policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect the relationship in the factual setting of the case. *Jennings*, 101 F.R.D. at 550, *citing Ryan v. C.I.R.*, 568 F.2d 531, 543 (7th Cir.1977). Once again, however, we must note that the Director

has provided us with no information upon which to make such comparisons. Our only resort, it would appear, is to Rules 502–510 of the Proposed Fed.R.Evid., which the Supreme Court approved by Congress failed to adopt. *Ryan*, 568 F.2d at 543–544; *Jennings*, 101 F.R.D. at 550. The proposed rules enumerated several privileges: statutorily required returns, communications between lawyer and client, psychotherapist and patient, husband and wife, communications to clergy, political votes, trade secrets, state secrets, and informant identity. Rules of Evidence, 56 F.R.D. 183, 234–258. Even so, courts have been reluctant to recognize some of these proposed privileges. *See e.g., Pesce v. J. Sterling Morton High Sch. Dist. 201*, 830 F.2d 789, 790, 798 (7th Cir.1987) (psychotherapist and clergy privileges); *U.S. v. Wettstein*, 733 F.Supp. 1212, 1214 (N.D.Ill. 1990) (psychotherapist privilege). Where federal courts have endorsed a privilege, they have found a need to protect "interpersonal relationships which are highly evolved by society and peculiarly vulnerable to deterioration should their necessary component of privacy be continually disregarded by courts of law." *United States v. Davies*, 768 F.2d 893, 897 (7th Cir.1985). None of these concerns are present in the Director's argument for the establishment of a privilege between a professional registrar or licensing board and applicants or licensees. As such, we are unwilling to create such a privilege in this case.

Finally, we note that plaintiff has asked that the Director be ordered to pay the expenses plaintiff has incurred as a result of the Director's non-compliance with the subpoena, pursuant to Fed.R.Civ.P. 37(a)(4). In a case such as this, the court sympathizes with the Director's unwillingness to produce documents given the state law restrictions on her ability to do so. *Schachar v. American Academy of Op-*

---

2. Even if these Illinois statutory provisions—part of Illinois' Freedom of Information Act ("IFOIA")—were relevant to this case, we would have to conclude that the Director had not met her burden of establishing their applicability. In *Margolis v. Director of Department of Revenue*, 180 Ill.App.3d 1084, 129 Ill.Dec. 777, 536 N.E.2d 827 (1st Dist.1989), the court ruled that,

in order to invoke the exemptions of IFOIA, the individual resisting disclosure must establish that the release of information would result in a "clearly unwarranted invasion of personal privacy." In this case, the Director has not come forward with any evidence to establish this factor.

*thalmology, Inc.,* 106 F.R.D. 187, 193 (N.D.Ill.1987). As such, we feel that expenses are best left to lie where they have fallen.

For the foregoing reasons, the Director's motion for a protective order is denied, and the Director is hereby ordered to produce the documents in question within 10 days.