See also, 803 F.Supp. 1338.

UNITED STATES of America, Plaintiff,

v.

STATE OF ILLINOIS, James R. Edgar, Governor of the State of Illinois; Jess McDonald, Director, Illinois Department of Mental Health and Developmental Disabilities; Kathleen A. Muniz, Superintendent, W.A. Howe Developmental Center, Defendant.

No. 92 C 0694.

United States District Court, N.D. Illinois, E.D.

April 9, 1993.

Fred L. Foreman, Elizabeth Muir Landes, U.S. Attorney's Office, Chicago, IL, John R. Dunne, Atty. General's Office, Arthur E. Peabody, Jr., Benjamin P. Schoen, Pamela K. Chen, Judith C. Preston, and Robert H. Stern, U.S. Dept. of Justice, Sp. Litigation Section, Civ. Rights Div., Washington, DC, for plaintiff.

Marita Clare Sullivan, Mitchell Bruce Katten, Illinois Atty. General's Office, Chicago, IL for defendant.

## ORDER

PLUNKETT, District Judge.

■ The Defendants object to the Report and Recommendation of Magistrate Judge Guzman of January 29, 1993, that recommends that the motion of the United States to compel production of various records and reports be granted. Those records are largely internal reports prepared by medical quality assurance committees at the Defendants' mental health facility ("Howe"). We agree with Magistrate Judge Guzman and adopt his recommendation.

The Defendants recognize, as they must, that their discovery dispute is governed by *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir.1981), which determined that the weight and effect of a state law privilege is limited in a case in the federal court governed by substantive federal law. As explained by the Seventh Circuit in *Shadur*, the district court should:

> 'weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'

*Shadur*, 664 F.2d at 1061–62 (quoting *Ryan v. C.I.R.*, 568 F.2d 531, 543 (7th Cir.1981)). The defendants argue here, as they did before the Magistrate Judge, that Sections 8–2101 and 2102 of the Illinois Medical Studies Act (Ill.Rev.Stat. ch. 110, paras. 8–2101 and 8–2102) prohibits the discovery of their internal review of medical care at Howe. The Act, quoted at length in the Magistrate Judge's opinion, protects against disclosure of any information used in the course of internal quality control or medical study for the purpose of improving medical care. We believe that under *Shadur*, the internal committee reports, minutes, and all other related information must be disclosed. While we agree with the reasoning of Magistrate Judge Guzman, we add these thoughts.

Under the criteria announced in *Shadur*, we first look to the need for truth. Here, when a case brought by the United States under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, *et seq.*, the need for truth is compelling. This Act is designed to protect the health and safety of persons in state institutions. Contrary to the defendants' assertion, the information sought by the United States is important, if not critical, to its case. It is true, as defendants argue, that other institution records will show what injury or event occurred at the health facility and what remedial steps, if any, were taken. But the very existence of quality assurance review committees, their evaluations, and their recommended action or inaction is important in deciding the ultimate issue in the case— whether the defendant was providing adequate medical care to residents. Adequate medical care is not only measured by remedial steps after injury but also by evaluation and affirmative steps taken by quality assurance committees. Indeed, the Complaint itself charges that the Defendants have failed to maintain accurate review systems to ensure professional treatment. (Compl. ¶ 7.) The records of the quality assurance committees are the only way to evaluate these claims.

The opinion of the Magistrate Judge makes clear that he relied on the affidavits of two consulting experts who testified to exactly these facts. (Mem. Op. at 591–92.) The Defendants complain that the opinion ignored the affidavits of their experts who assert that all relevant information can be gleaned from other discoverable sources. But those experts only addressed whether other discovery would disclose injuries and resultant treatment. Those assertions miss the point—the quality control committee discussions and decisions are important not to prove what remedial steps were taken, but to

determine whether the committees themselves were doing their job. If they were not, the case of the United States is strengthened.

The *Shadur* decision also requires an evaluation of the policy to be furthered by the state privilege and whether that policy will be thwarted by discovery of the committees' review. We believe that discovery here is consistent with the goals of the Illinois statute. Both the Illinois Medical Studies Act and CRIPA have the same goal—to improve medical care for patients. Discovery of the work of the various quality assurance committees' records will not be used in malpractice actions. The review of this material will aid in a determination of the quality of medical care at Howe. In denying the asserted privilege in *Shadur*, the court concluded in words equally applicable to this dispute:

> To recognize hospital disciplinary proceedings as privileged, regardless of the purpose for which disclosure is sought, would in effect grant such committees, their members and participants absolute immunity from prosecution for all statements made and actions taken in the context of such proceedings. Illinois itself has refused to extend its privilege this far.... We also decline to do so.

*Shadur*, 664 F.2d at 1063 [citation omitted]. The *Shadur* court held that the public interest in private enforcement of federal antitrust laws was simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the hospital's privilege. *Id.* In our case, the *public* interest in the United States government's enforcement of federal health laws is equally, if not more, compelling.

The recommendation of Magistrate Judge Guzman is approved and adopted. Defendants shall produce all records within twenty (20) days of the date of this order.

## MEMORANDUM OPINION AND ORDER

GUZMAN, United States Magistrate Judge.

The United States has filed a motion to compel production of documents in this case. It seems that the defendants have objected to the production of all documents responsive to the plaintiff's document requests 4, 5, 6, 7, 9, 10 and 43 of the United States' First Request for the Production of Documents, and document requests 3 and 4 of the United States Third Request for the Production of Documents. Defendants contend the documents were privileged under Sections 8–2101 and 8–2102 of the Illinois Medical Studies Act (Ill.Rev.Stat.1989, ch. 110, ¶ 8–2101 and ¶ 8–2102) ("A quality assurance privilege"). Section 8–2101 of the Act states in part as follows:

> "All information, interviews, reports, statements, memoranda or other data of ... the Illinois Department of Mental Health and Developmental Disabilities ... used in the course of internal quality control or medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential, and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting, or revoking staff privileges...."

Section 2102 of this Act provides that the information described above is not discoverable in any action. It is this privilege that the defendants assert when they refuse to produce the documents related above. The documents being requested by plaintiff are as follows:

A. Injury Review Committee (January and May 1990 and May 1991 to present);

B. Behavior Management Committee (May 1991 to present);

C. Infection Control Committee;

D. Human Rights Committee (April 1990 and May 1991 to the present);

E. Executive Staff (May 14, 1991 to present);

F. Mortality Review Committee;

G. Quality Assurance Committees;

H. Pharmacy and Therapeutics Committee.

Plaintiffs seek any notes taken by any of the attendees at any of these committee meetings for the period December 31, 1989

to the present, as well as the minutes of all such meetings. Plaintiffs also seek all reports, surveys, reviews, or Quality Assurance evaluations relating to the treatment or care of residents at Howe prepared by any internal committee at Howe. Plaintiffs also seek all Quality Assurance Nurse Weekly Reports for the period after June 30, 1990.

In regards to the Third Request for Documentation, the defendants refused production of the following documents:

All written communications and notes of oral communications between and among any staff of Howe and the administration of the Department of Mental Health and Developmental Disabilities regarding the adequacy of medical care provided at Howe,

The staffing of Howe,

The record keeping and record review system at Howe.

The level of individualized training and behavioral programming provided by Howe,

The use of restraints at Howe,

The prescription of psychotropic medication for residents of Howe,

Abusive or neglect of Howe residents, or injuries to Howe residents.

Plaintiffs also seek all such communications whether oral or written among administrators of the Department of Mental Health and Developmental Disabilities. The defendants have further, in regards to the First Request for Production of Documents, refused to produce the following:

Injury reports, statistical summaries and analyzes of incident reports for the period December 31, 1989 to the present.

Individual incident reports for the period April 1991 to the present.

As well as all reports, surveys, reviews, for Quality Assurance Evaluations relating to the treatment or care of residents at Howe prepared by any state or federal agency since January 1, 1990, to the present.

## DISCUSSION

■ Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may discover any matter *not privileged* which is relevant to the subject matter in the pending action. Rule 501 of the Federal Rules of Evidence provides that the Federal Common Law of Privilege shall apply in cases based upon a federal cause of action. These two sections, therefore, mandate that privileged material, as defined by the Federal Common Law be protected in federal question cases. *See William T. Thompson, Co. v. General Nutrition Corporation, Inc.,* 671 F.2d 100 (3rd Cir.1982). It is therefore the Federal Common Law of privilege that is supreme. This does not mean, however, that the law of the state may not be considered as one of the factors in making the fact intensive determination of whether or not the asserted privilege applies. *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, at 1061 (7th Cir.1981). Where a state provides for a privilege, a strong policy of comity between states and federal sovereignties requires the federal courts to recognize the privilege if this claim can be done without significant violence to federal substantive and procedural policy. *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976). To do otherwise would be to subject the citizens of the jurisdiction to a double standard of confidentiality and privacy depending on which court hears a particular case. This result should be avoided if possible. *Lora v. Board of Education,* 74 F.R.D. 565 (E.D.N.Y.1977).

■ The party asserting the protection of a privilege has the burden of establishing both the existence and applicability of the privilege. *Brock v. Gerace,* 110 F.R.D. 58 (D.N.J.1986). Defendant contends that the Illinois Medical Studies Act, cited above, provides the privilege that should be applied in this case as a conditional privilege under Federal Common Law. In the *Shadur* decision, *supra,* the District Court recited the principles previously set forth by the Circuit Court to be used in making the determinations required under Rule 501 of the Federal Rules of Evidence. First, because evidentiary privileges operate to exclude relevant evidence and therefore to block the judicial fact finding function, they are not favored and, where recognized, must be narrowly construed. *United States v. Nixon,* 418 U.S.

683 at 710, 94 S.Ct. 3090 at 3108, 41 L.Ed.2d 1039 (1974). Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should weigh the need for the truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that the recognition of the privilege will, in fact, protect that relationship in the factual setting of the case. In *Shadur*, the court found that the need for the truth outweighed the policies and interests which the state statute sought to further. That case, of course, involved an allegation that a group of physicians had conspired to deny the plaintiff hospital staff privileges and thereby destroyed his practice so as to limit competition in the providing of physician's services. The court noted that the lawsuit, while it involved directly the plaintiff's interest, also involved a strong public interest in open and fair competition which is embodied in the Sherman Act under which the case arose. The court found the public interest and private enforcement of Federal Antitrust Law is simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the hospital's privilege. This determination was reached in spite of the fact that the court recognized that the basic policy behind the privilege the hospital sought to assert was also a substantial one.

The cause of action in this case is brought pursuant to the Civil Rights of Institutionalized Persons Act. The purpose of this Act is to allow and encourage, the Federal Government to investigate and correct institutional Civil Rights Violations. Ironically, the goal of the Federal Legislation appears to be the same as the purpose behind the Medical Studies Act. Both claim as their ultimate goal the improvement of medical services provided by the institutions which they cover. Clearly, however, the goal of the Civil Rights of Institutionalized Persons Act is compelling. In *Shadur, supra*, the court found that the objectives of the Sherman Act outweighed the objectives sought to be furthered by the Medical Studies Act. Similarly, to the extent that the Medical Studies Act and its provisions for privilege and privacy

impede the effective enforcement of the Civil Rights of Institutionalized Persons Act, the former must give way to the latter.

The last issue to be determined then, is to what extent, if any, the enforcement of the Medical Studies Act privilege would interfere with in this particular case, the enforcement of the Civil Rights of Institutionalized Persons Act. In their argument, the defendants point to the massive amounts of documents and materials they say have already been produced. They also argue strongly that all of the relevant basic information relative to the quality of care and treatment being afforded the inmates at their institutions is contained in these documents and discovery materials already disclosed. They argue that there is not here, as in the *Shadur* case, a particularized need to invade the privilege and privacy zone of the Medical Studies Act, because no one is alleging in this case misconduct by the very committees which the Act seeks to protect. They also point to the fact that through a careful review of the materials already provided to it, the plaintiff in this case can gather the exact same information that would be available through a review of the minutes of the meetings of the various committees which the Medical Studies Act protects.

The plaintiffs, on the other hand, make it clear that this is not so. Through arguments and through the affidavits of two consulting experts, they establish the following points:

First, it is essential in evaluating the quality of the services being provided by any mental health care institution to evaluate its quality control procedures themselves. That is, it is necessary to evaluate how the quality control committees function, if at all. The only way to do that is to review the minutes of the meetings, the notes of the meetings and the other materials requested which have been denied.

Second, plaintiffs experts argue, it is necessary in order to evaluate how well the quality control committees are actually functioning to be able to compare actual problems and incidents which have occurred within the institution to the minutes of the meetings of the relevant committees

charged with assuring quality control to see to what extent, if any, the committees have (1) Become aware of the problem and (2) Moved in an efficient manner to correct them.

It seems to me that the recognition of the state created privilege in this case would thwart the Congressional intent and purpose of the Civil Rights of Institutionalized Persons Act to investigate and correct institutional Civil Rights Violations. This is the clear mandate of the Act, and to allow the recognition of the qualified privilege under these circumstances would be to block the ability of the Federal Government to effectively and vigorously enforce provisions of the Act.

Plaintiffs motion to compel is therefore GRANTED.

**SO ORDERED.**

Enter: January 29, 1993.